Court held that the UM/UIM step-down provision was ineffective. *Id.* at 8–9, 875 *A.*2d 859.

That is not this case. First, the coverage provided to Rossos through the latest amendment actually increased his coverage. If he had examined and understood his prior policy, he would have believed that there would be no coverage available under the circumstances of this case.

Second, the lack of specific notice of the amendment should not defeat an alteration that conformed the High Point policy to the express public policy of this State. Furthermore, plaintiffs should not be able to seize on the lack of specific notice of the amendment to the policyholder to receive more coverage than they would have received if the insurer had retained the exclusion despite stated public policy.

We, therefore, affirm the November 29, 2005 order granting defendant High Point's motion for summary judgment.

Affirmed.

923 A.2d 311

DOLORES SIMMERMON, ADMINISTRATRIX AD PROSEQUEN-DUM FOR THE ESTATE OF JAMES SIMMERMON, PLAIN-TIFF–APPELLANT, v. DRYVIT SYSTEMS, INC., DRYVIT, NEW WAVE PLASTERING INC., THE MANNING COMPANY, DE-FENDANTS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Telephonically argued March 7, 2007—Decided June 4, 2007.

Before Judges WINKELSTEIN, FUENTES and BAXTER.

*Ronald P. Sierzega* argued the cause for appellant (*Hoffman DiMuzio*, attorneys; *Mr. Sierzega*, of counsel and on the brief).

*David N. Cohen* argued the cause for respondents (*Edwards Angell Palmer & Dodge*, attorneys; *Andrew P. Fishkin*, of counsel; *Mr. Fishkin*, *Mr. Cohen and Danielle Brucchieri*, on the brief).

The opinion of the court was delivered by

FUENTES, J.A.D.

Plaintiff, the estate of James Simmermon, appeals from the order of the Law Division granting defendant Dryvit Systems, Inc.'s (Dryvit) motion for summary judgment. Defendant is the manufacturer of a synthetic stucco used to cover plaintiff's home. Plaintiff filed this consumer fraud action in this State, alleging that the material flaked and cracked, and as a result he suffered ascertainable damages.

At issue in this appeal is whether plaintiff is bound by the terms of a settlement in a class action filed in the State of Tennessee against defendant. The Law Division answered this question in the affirmative, and entered an order dismissing plaintiff's New Jersey case. The trial court found that: (1) plaintiff is within the class of litigants covered by the Tennessee case; (2) he was constructively on notice of his right to opt out of the settlement; (3) despite such notice, he failed to opt out of the settlement; and (4) he is bound by the terms of the settlement, and thus precluded from prosecuting his New Jersey case.

After a careful review of the record, and in light of prevailing legal standards, we reverse. We hold that Dryvit's failure to comply with the requirements of *Rule* 4:5–1(b)(2) prevents it from invoking the preclusive effect of the settlement agreement in the Tennessee matter. We address this issue in the following factual context.

On September 11, 2001, plaintiff filed this cause of action against defendant Dryvit. Approximately eleven months earlier, on November 14, 2000, a class action suit was filed against Dryvit in the Tennessee Circuit Court, alleging negligent installation of synthetic stucco on the homes of the members of the class. *Posey v. Dryvit Sys., Inc.,* No. 17,715–IV (Jefferson County Cir. Ct., Tenn.). The class was defined as:

[A]ll Persons who, as of the Notice Date, in any State other than North Carolina, own Property that is clad in whole or in part with Dryvit EIFS installed after January 1, 1989. Excluded are those who: (1) prior to the Notice Date, have settled with Settling Defendant, providing a release of claims relating to Dryvit EIFS; or (2) have obtained a judgment against Settling Defendant for a Dryvit

EIFS claim, or had a judgment entered against them on such a claim in Settling Defendant's favor.

On March 15, 2002, Dryvit filed its responsive pleading in this New Jersey case. The pleading did not mention the then pending Tennessee class action.

On April 8, 2002, the parties in the *Posey* class action reached a settlement agreement with Dryvit. On January 14, 2003, the Tennessee court issued a final order: (1) approving the settlement; (2) conditionally certifying the settlement class; and (3) approving the proposed Notice Plan, as well as the form of Class Notice of Settlement and Summary Notice. The order specifically provided that:

> Any Settlement Class Member who did not timely file and serve an objection in writing to the Settlement Agreement, to the entry of Final Order and Judgment, or to Class Counsel's application for fees, costs, and expenses, in accordance with the procedure set forth in the Class Notice and mandated in the Order Granting Preliminary Approval of Settlement, is deemed to have forever waived any such objection by appeal, collateral attack, or otherwise.

The order further stated:

> All Class Members who have not validly excluded themselves from the Class in accordance with the April 8 Order are hereby permanently barred and enjoined from ... filing, commencing, prosecuting, intervening in, participating in as Class members or otherwise, or receiving any benefits or other relief from, any other lawsuit, arbitration, or administrative, regulatory or other proceeding or order in any jurisdiction based on or relating to the claims and causes of action, or the facts and circumstances relating thereto, in this Action....

Dryvit submitted affidavits from two agents certifying that notice of the settlement was mailed to plaintiff on June 24, 2002. The notice included an opt-out form, which was to be returned by September 3, 2002, for it to be considered effective. Notably, plaintiff's notice was not among the notices returned to defendant as undeliverable. Plaintiff did not return an opt-out form, and the litigation in New Jersey continued.[1]

---

[1] Thereafter, a group of nonparty intervenors appealed the settlement order to the Tennessee Court of Appeals. The court stayed the proceedings pending appeal. On March 22, 2004, the Tennessee Court of Appeals reversed the decision of the trial court denying a motion by several homebuilders to inter-

Throughout these various proceedings and events, Dryvit did not amend its initial pleading in the New Jersey case to apprise plaintiff of the existence and status of the Tennessee case. On December 24, 2003, Dryvit filed its first motion for summary judgment in the Superior Court, which the Law Division denied on March 12, 2004. On October 20, 2004, while the *Posey* litigation was stayed pending appeal, Dryvit filed a motion before the Law Division to stay the proceedings in New Jersey pending the resolution of the class action litigation. This was the first time that Dryvit formally disclosed the existence of the Tennessee case.

In support of its motion, Dryvit argued that because plaintiff was a member of the class and did not opt out of the *Posey* litigation, he would be bound by the outcome of the proceedings in Tennessee. The Law Division denied the motion on November 19, 2004. The motion judge made the following findings in support of his ruling:

> I am satisfied that the Doctrines of Equitable Estoppel and Laches should be applied.
>
> Clearly, there's been a couple years worth of on-going discovery. There was no real effort to notice or involve the plaintiff in the Tennessee action until after the opt-out date was past.
>
> Courts are bound by concepts of fundamental fair play. I'm not here to advance anybody's issue. If it were case disposition, the easiest thing to do would be to dismiss it [because] I could check one more case off, but that's not what we're here to do.
>
> We're here to allow people to have their day in court if they are, indeed, entitled under our rules to their day in court.
>
> Although there's no New Jersey case directly on point that we could find, cases from other jurisdictions, in our view, support a finding the plaintiff effectively opted-out by reason of what was going on.
>
> Although he didn't—the plaintiff did not file the opt out procedures, his continuance of litigation without notice of the settlement, coupled with Dryvit's attorney's failure, in my view to inform him of the class action, while actively litigating this case, reasonably demonstrates a desire to be excluded from the Posey class action litigation and I so determine. I deny the motion to stay.

---

vene. *Posey v. Dryvit Sys., Inc.*, No. E2003–00392–COA–R3–CV, 2004 *WL* 572348, at *2, 2004 *Tenn.App. LEXIS* 174, at *6 (Tenn.Ct.App. Mar.22, 2004).

On April 28, 2005, after pending appeals were resolved, the court in Tennessee entered a final order approving the settlement of the *Posey* class action.

On September 8, 2005, after all pending appeals in the Tennessee action were exhausted, Dryvit filed its second motion for summary judgment, before a different Law Division judge in New Jersey. Dryvit argued that plaintiff's complaint should be dismissed because of the preclusive effect of the Tennessee class action. This time, the court granted the motion. The motion judge set out his reasons in a memorandum of opinion. Despite the absence of direct proof that plaintiff actually received the settlement notice advising him of his right to opt out of the Tennessee class action, the court found that the court-ordered notice procedures of the class action met the Due Process requirements under controlling case law. As such, plaintiff was bound by the terms of the settlement, and was therefore precluded from prosecuting his case in New Jersey. In reaching this decision, the court did not consider the notice requirements in *Rule* 4:5–1(b)(2).

A proper resolution of the issues raised here requires that we examine the provisions of *Rule* 4:5–1(b)(2), which read as follows:

Notice of Other Actions and Potentially Liable Persons. *Each party shall include with the first pleading a certification as to whether the matter in controversy is the subject of any other action pending in any court* or of a pending arbitration proceeding, or whether any other action or arbitration proceeding is contemplated; and, if so, the certification shall identify such actions and all parties thereto. Further, each party shall disclose in the certification the names of any non-party who should be joined in the action pursuant to *R.* 4:28 or who is subject to joinder pursuant to *R.* 4:29–1(b) because of potential liability to any party on the basis of the same transactional facts. *Each party shall have a continuing obligation during the course of the litigation to file and serve on all other parties and with the court an amended certification if there is a change in the facts stated in the original certification.* The court may require notice of the action to be given to any non-party whose name is disclosed in accordance with this rule or may compel joinder pursuant to *R.* 4:29–1(b). If a party fails to comply with its obligations under this rule, the court may impose an appropriate sanction including dismissal of a successive action against a party whose existence was not disclosed or the imposition on the noncomplying party of litigation expenses that could have been avoided by compliance with this rule. *A successive action shall not, however, be dismissed for failure of compliance with this rule unless the failure of compliance was inexcusable and the right of the undisclosed party to defend the successive*

*action has been substantially prejudiced by not having been identified in the prior action.*

[ (Emphasis added).]

Here, the Tennessee action began on November 14, 2000. The New Jersey action was filed on September 11, 2001. Despite the provisions of *Rule* 4:5–1(b)(2), requiring Dryvit to disclose the existence of the Tennessee class action, Dryvit's initial responsive pleading did not include the certification required under the *Rule.* Dryvit did nothing to cure this material deficiency throughout the entire time that the Tennessee matter was pending. At oral argument before us, we requested an explanation for Dryvit's failure to comply with the *Rule's* clear mandate. None was offered.

Had Dryvit provided the required certification disclosing the existence of the Tennessee class action, plaintiff would have been in the position to take the steps necessary to affirmatively declare his wishes to proceed with his New Jersey cause of action, independent of the outcome of the Tennessee case. The trial court would also have been in the position, as part of its case management responsibilities, to address the situation in a timely fashion.

As noted by the *Rule* itself, disclosure of the existence of related pending cases is necessary to avoid the "potential liability to any party on the basis of the same transactional facts." *Ibid.* This is precisely what occurred here. Dryvit's failure to disclose the existence of the Tennessee case rendered plaintiff potentially bound by the terms of a settlement of a case with the same transactional facts. Dryvit should not be permitted to wait until the Tennessee litigation is concluded, violate the requirements of *Rule* 4:5–1(b)(2), and then, when it is too late for plaintiff to opt out of the Tennessee proceedings, use the Tennessee class action settlement as a bar to plaintiff obtaining any relief in New Jersey.

In reaching this conclusion, we do not address the Due Process analysis conducted by the trial court. Enforcement of the *Rule's*

clear injunction is an entirely independent legal basis supporting this result.

Reversed and remanded.